IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS F. O'BOYLE,

    Plaintiff,

  v.                      Civil Action No. 2:18-cv-21
                              (Judge Kleeh)

BENCHMARK CONFERENCE
CENTERS OF WEST VIRGINIA,
d/b/a STONEWALL RESORT,

    Defendant.

**MEMORANDUM ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

Pending before the Court is the *Motion for Summary Judgment* of Defendant Benchmark Conference Centers of West Virginia, d/b/a Stonewall Resort ("Stonewall Resort") [Dkt. No. 21]. Plaintiff, Thomas F. O'Boyle ("O'Boyle"), filed a response in opposition to the motion [Dkt. No. 24], and Defendant filed a reply [Dkt. No. 26]. The matter is now ripe for decision. For the reasons stated, the Defendant's motion is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff O'Boyle resides at 107 Hoodridge Drive, Pittsburgh, Pennsylvania 15228 [Dkt. No. 1 at ¶ 1]. Defendant Stonewall Resort is a West Virginia limited liability company that is duly organized and existing under the laws of West Virginia with an office and/or place of business located at 940 Resort Drive, Roanoke, West Virginia 26447 [Id. at ¶ 3]. The Benchmark Management Company, LLC, a Texas limited

liability company, is the sole member of Stonewall Resort [Id.]. This matter is before the Court on complete diversity of citizenship between Plaintiff and Defendant, pursuant to 28 U.S.C. § 1332 [Id.].

From July 9, 2017, through July 13, 2017, O'Boyle was a patron of Stonewall Resort [Dkt. No. 22 at 1]. On July 10, 2017, while a guest at Stonewall Resort, O'Boyle was riding a Specialized Roubaix road bicycle on the resort premises when he hit a speed bump which caused him to lose control of his bicycle and crash [Dkt. No. 24 at 1-2]. O'Boyle was thrown over his bicycle's handlebars and skidded down the road on the right side of his body [Id. at 2]. O'Boyle sustained injuries as a result of the crash, including a gash on his right leg which removed the skin from his knee to his ankle [Id.]. Plaintiff also received injuries to his solar plexus, resulting in bruising to his stomach and torso, as well as his elbow [Id.]. O'Boyle alleges that the crash was so violent that his specialized bicycle was a total loss [Id.]. He further alleges that the replacement value of his bicycle is $3,800 [Id.].

Plaintiff claims that the speed bump at issue was a worn, hard plastic barrier that was secured in place with bolts [Id. at 2]. O'Boyle further claims that the speed bump was steeply angled on each side [Dkt. No. 1 at ¶12]. Plaintiff's expert witness, Ronald W. Eck, P.E., Ph.D., is an expert on matters related to roadways and traffic control devices, and explained the difference between a speed bump and a speed hump as follows:

> [A speed bump is] a raised pavement area across a roadway
> and generally has a height of three to six inches with a
> length of one to three feet [. . .] [Speed bumps] cause
> significant driver discomfort at typical residential speeds
> and generally result in vehicles slowing to 5 mph or less at
> the bump [. . .] [I]n general, bicycles, motorcycles, and
> other vehicles with rigid or near-rigid suspension systems
> are more susceptible to damage and a loss of control from
> bumps than vehicles with flexible suspensions.
>
> In contrast to a bump, a speed hump is a raised area in the
> roadway pavement surface extending transversely across the
> travel way. They normally have a maximum height of 3 to 4
> inches with a travel length of approximately 12 feet. Within
> typical residential speed ranges, humps create a gentle
> vehicle rocking motion that causes the driver some
> discomfort and results in most vehicles slowing to 15 mph or
> less at each hump [. . .] [S]peed humps represent a lesser
> risk to vehicles with rigid or near-rigid suspensions than
> do speed bumps.

[Dkt. No. 24 at 2].

According to O'Boyle, the Defendant had no signage on the road or next to the road to warn of the speed bump [Dkt. No. 1 at ¶ 13]. Plaintiff also alleges that on its website and elsewhere, Stonewall Resort references biking as one of its main recreational activities to be enjoyed by guests of the resort, and that it was foreseeable that patrons would be biking on the road where speed bumps were placed [Id. at ¶ 15].

Following his bicycle crash on July 10, 2017, O'Boyle returned to the resort lobby to seek medical attention [Dkt. No. 24 at 3]. The resort did not have a medical professional available, provided no medical assistance to the Plaintiff, and did not have a first aid kit available for guests [Id.]. O'Boyle used the resort shuttle to return

to his cottage and tend to his own injuries [Id.]. Plaintiff claims that his injuries were significant and that he sought medical treatment at a nearby urgent care facility in Weston, West Virginia [Id.]. At the urgent care facility, O'Boyle was prescribed antibiotic by the physician on duty and directed to follow up with his doctor [Id.].

On July 14, 2017, O'Boyle was treated by his hematologist, Dr. Robert Volkin of UPMC [Id.]. Volkin examined Plaintiff's swollen right leg and ordered a Venous Doppler Test to check for blood clots [Id.; Dkt. No. 1 at ¶ 19]. The test showed a partially occlusive thrombus in the right popliteal vein which Plaintiff claims developed as a result of the injury he sustained to his leg at Stonewall Resort [Dkt. No. 24 at 4]. Plaintiff also alleges that Volkin informed him that he will likely have chronic blood clotting issues for the rest of his life, and that he was prescribed Xarelto, a medication which causes severe side effects [Id.]. According to Plaintiff, his leg wound took approximately six (6) weeks to heal and caused him considerable pain and suffering [Id.].

On February 26, 2018, Plaintiff filed the Complaint in this matter alleging negligence against Defendant [Dkt. No. 1]. O'Boyle asserts that Defendant failed to properly and safely maintain the resort for use by guests, customers, and business invitees; installed a needless and dangerous speed bump on the property of the resort and created a dangerous condition; failed to warn guests, customers, and business invitees of the dangerous condition with signage on the road or next

to the road which would have marked the presence of a dangerous speed bump, in violation of the Federal Highway Administration's Manual on Uniform Traffic Control Devices ("MUTCD"); caused O'Boyle severe and serious injuries; failed to have a medical professional and/or first aid kit available to guests; and failed to provide assistance to Plaintiff following his injuries [Id. at ¶ 28].

Defendant Stonewall Resort denies that it was negligent and contends that it maintained the premises in a safe condition for its guests [Dkt. No. 3 at ¶¶ 20, 21]. With its motion for summary judgment, Stonewall Resort further contends that Plaintiff cannot prevail on his negligence claim because the speed bump that allegedly caused O'Boyle to crash his bicycle is "entirely within the purview of" West Virginia's "Open and Obvious Doctrine," and his claim is "barred by law" [Dkt. No. 22 at 5]. Defendant asserts that the open and obvious doctrine is dispositive of Plaintiffs' negligence claim, and that Plaintiff's own negligence in attempting to maneuver the speed bump proximately caused his injuries [Id. at 7].

## II.  STANDARD OF REVIEW

Defendant's *Motion for Summary Judgment* [Dkt. No. 21] is brought pursuant to Rule 56(c) of the Federal Rule of Civil Procedure. Under Rule 56(c),

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013); News & Observer, 597 F.3d at 576.

Thus, a summary judgment motion should be granted if the nonmovant fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. Celotex, 477 U.S. at 323. That is, once the movant shows an absence of evidence on one such element, the nonmovant must then come forward with evidence demonstrating there is indeed a genuine issue for trial. Id. at 323-324. The existence of a mere scintilla

6

of evidence supporting the nonmovant's position is insufficient to create a genuine issue; rather, there must be evidence on which a jury could reasonably find for the nonmovant. Anderson, 477 U.S. 252. When determining whether summary judgment is appropriate, a court must view all factual evidence and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. Hoschar, 739 F.3d at 169.

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," Anderson, 477 U.S. at 249, nor will it make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. Anderson, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-323.

### III. DISCUSSION

Stonewall Resort requests summary judgment as a matter of law based on West Virginia Code § 55-7-28 which limits the liability of a possessor of real property for injuries caused by open and obvious hazards [Dkt. No. 22 at 5]. This code section states:

7

> (a) A possessor of real property, including an owner, lessee or other lawful occupant, owes no duty of care to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant, and shall not be held liable for civil damages for any injuries sustained as a result of such dangers.
>
> (b) Nothing in this section creates, recognizes or ratifies a claim or cause of action of any kind.
>
> (c) It is the intent and policy of the Legislature that this section reinstates and codifies the open and obvious hazard doctrine in actions seeking to assert liability against an owner, lessee or other lawful occupant of real property to its status prior to the decision of the West Virginia Supreme Court of Appeals in the matter of Hersh v. E-T Enterprises, Limited Partnership, 232 W. Va. 305 (2013). In its application of the doctrine, the court as a matter of law shall appropriately apply the doctrine considering the nature and severity, or lack thereof, of violations of any statute relating to a cause of action.

W. Va. Code § 55-7-28.

Stonewall Resort further relies on a recent West Virginia Supreme Court of Appeals decision to argue that Plaintiff is prevented from recovering for injuries sustained by open and obvious dangers [Id. at 6]; see Tabit v. Kroger Grp. Coop., No. 18—287, 2019 W. Va. LEXIS 25 (Feb. 11, 2019). The Defendant concedes that the speed bumps at issue are not a "danger" or "hazard," but rather a "safety mechanism to protect campers from the danger of speeding cars" [Id. at 6]. In Tabit, a defendant property owner was sued by plaintiff for injuries the plaintiff sustained when she "'tripped over the abnormally large caution sign that primarily blocked ingress and egress from the

bathroom leaving only the narrow route to step over and around it'" [Id. (quoting Tabit, at 2)].

During the discovery phase of the case, the plaintiff in Tabit testified that she saw the cautionary sign and walked around it before tripping and falling [Id.]. Defendant in the case sought summary judgment and the circuit court granted the motion, finding that in West Virginia, the law assigns "'no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner and occupant'" [Id.]. On appeal, the Court in Tabit upheld the circuit court's ruling, stating:

> Petitioner urges us to find that respondents created a hazard with the cautionary sign they used to warn of another, but we are loath to condemn an owner or occupant's placement of a cautionary sign in an open and obvious manner to protect the public from harm. In consideration of the need for the sign, the obviousness of the sign, petitioner's acknowledgement of having seen it, and her heedless attempt to circumnavigate it, we observe that the harm, if any, posed by the sign placement did not outweigh the greater burden on respondents to safeguard their guests.

[Id. at 7 (quoting Tabit at 6-7)]. Defendant argues that the facts here present a similar issue for the Court – the public safety need for placement of the speed bump, the open and obvious nature of the speed bump, and the fact that Plaintiff had previously seen and traversed the speed bump before crashing his bicycle [Id.]. Stonewall Resort argues that Plaintiff's assertions concerning the improper design and material of the speed bump, and the lack of signage to warn individuals traveling on the road of the presence of the speed bump

9

are immaterial and unnecessary for the Court to consider [Id.]. The Court cannot agree.

Unlike the cautionary signage that was considered in the Tabit case, O'Boyle's claim involves a speed bump which is a specific traffic control device intended to affect the speed and behavior of individuals traveling on a roadway. To support his allegations, Plaintiff relies on the existence of the Federal Highway Administration's MUTCD provision applicable to speed bumps, that is Section 2C.23, which suggests when warning signs should be used for road bumps (W8-1) and dips (W8-2) [Id. at 8]. While Plaintiff contends that Stonewall Resort violated this standard by not placing signs to warn drivers and/or cyclists of the speed bump's placement, the Court need not resolve the issue of whether the standard is a guideline or a mandatory requirement, or whether it was violated. The fact that speed bumps on roadways where motorists and cyclists may travel have specific or recommended design and material standards, and guidelines as to warn travelers who will encounter the traffic control devices, distinguishes the circumstances here from those presented in Tabit. Nor does it matter for the Court's analysis that a lack of warning signs may have been the proximate cause of Plaintiff's injury – a question of material fact exists as to whether the speed bump installed by Defendant on a road used by both motor vehicles and bicycles is an open and obvious hazard as contemplated under West Virginia law, or whether it is a traffic control device used for the safety of

individuals on and/or near the roadway and governed in some respect by the standards and recommendations from the Federal Highways Administration.[1]  Because a question of material fact exists, judgment as a matter of law is improper.

Defendant Stonewall Resort also argues that Plaintiff's claim should be precluded on summary judgment because, while Defendant has a duty to protect its patrons from unreasonable harm, West Virginia law does not allow recovery where Plaintiff failed to operate his bicycle – a vehicle under West Virginia law – as a reasonably prudent cyclist [Dkt. No. 22 at 10].  Defendant seems to contend that the Court should summarily conclude from the facts presented that because Plaintiff saw the speed bump and nevertheless crashed, O'Boyle was not riding his bicycle in a prudent manner or otherwise abiding by all state traffic laws [Id.].  The Court cannot make this finding on the record currently before it.

## IV. CONCLUSION

Upon consideration of the record, and mindful of the requirement to draw any inferences in the light most favorable to the Plaintiff,

---

[1] Notably, Defendant seems to argue that the industry standards relied on and referenced by Plaintiff's expert witness, Mr. Eck, do not apply to the speed bump it placed on its resort road, but that even by those standards, the speed bump accomplished what Stonewall Resort intended – "using speed bumps to keep speeds limited to 10 m.p.h. or slower" [Dkt. No. 22 at 12].  Stonewall Resort obviously expected individuals traveling on its road to adjust the speed and operation of their vehicles, including bicycles, based on the speed bump, yet believes that it cannot be subject to the federal MUTCD standards for the design, material, and placement of the speed bump or the use of warning signs.  These positions are not entirely consistent and appear to acknowledge the existence of a genuine issue of material fact that prevents this Court from awarding summary judgment.

11

the non-movant, the Court **DENIES** the Defendant's *Motion for Summary Judgment* [Dkt. No. 21].

It is so **ORDERED**.

The Clerk of the Court is directed to provide a copy of this Order to counsel of record.

DATED: June 12, 2019

/s/ Tom S Kleeh _____

THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE